IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RICHARD HERSHEY**                                                                                  **PLAINTIFF**

v.                              CASE NO. 4:18-CV-00476 BSM

**MULTI-PURPOSE CIVIC CENTER
FACILITY BOARD FOR PULASKI
COUNTY, ARKANSAS,** *et al.*                                                          **DEFENDANTS**

## ORDER

The motion for summary judgment [Doc. No. 40] of defendants Marty Curtright and the Multi-Purpose Civic Center Facility Board for Pulaski County, Arkansas ("the board") is granted.

Richard Hershey's motion for leave to file a supplemental affidavit [Doc. No. 64] is denied. The joint motion for summary judgment [Doc. No. 43] of defendants C. Davis, Randy Flippin, and John P. Lyon is denied as moot because Davis, Flippin, and Lyon were dismissed from this lawsuit. Doc. No. 63. Hershey's claims against the John Doe defendants are dismissed, and this case is dismissed.

## I. BACKGROUND

Hershey is suing the Verizon Arena board and security officer Curtright for constitutional violations. The undisputed facts are as follows.

The board was established by Pulaski County to operate the Verizon Arena, an entertainment complex in North Little Rock, and its surrounding property. Brief in Support of Mot. Summ. J. ("Br. Mot. Summ. J.") at 2, Doc. No. 41. The board employs Curtright as

a security officer. Pl.'s Resp. Defs.' F. ("Resp. Board F.") ¶ 46, Doc. No. 51. The board's purpose is to lease the arena to outside groups for events and to make the surrounding property accessible for event attendees. Resp. Board. F. ¶¶ 3–6. There are orange delineator posts placed along Broadway Street that direct attendees toward the arena, in addition to metal bollards, signs, and planters that surround the arena. *Id.* ¶ 8; Pl.'s Resp. Defs.' F. ("Resp. NLRPD F.") ¶ 4, Doc. No. 53. There are public sidewalks adjacent to the arena. *Id.* ¶ 71.

Hershey is employed by non-profit organizations to distribute leaflets that endorse vegetarianism. *Id.* ¶¶ 27–28. During the 2017 Winter Jam concert, which is attended by up to 18,000 people, Hershey leafleted at the top of the ramp leading to the arena's Broadway entrance. *Id.* ¶¶ 35, 44, 48. Curtright told Hershey he could not leaflet there and that he had to cross the street. Resp. Board F. ¶ 49; Resp. NLRPD F. ¶ 15. Hershey walked down the ramp but refused to cross the street, so Curtright called 911, and North Little Rock police officers responded. Resp. Board F. ¶¶ 51, 54, 56. Hershey refused to move when the officers told him to, so the officers arrested him and transported him to the Pulaski County Detention Center. *Id.* ¶¶ 55, 56; Resp. NLRPD F. ¶¶ 23–33.

During the 2018 Winter Jam concert, Hershey again handed out leaflets, and a security officer told him that he could not leaflet on arena property. Resp. NLRPD F. ¶¶ 43–44. Hershey refused to leave the sidewalk on the south side of Broadway, and the officer called NLRPD officer Flippin, who was assigned to the Broadway crosswalk. *Id.* ¶¶ 44–46. The

security officer told Flippin that attendees had complained about Hershey's leafleting, and Flippin told Hershey to move due to the heavy pedestrian traffic. *Id.* ¶¶ 49, 54. Hershey eventually complied. *Id.* ¶¶ 59, 61.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

A.  John Doe Defendants

Hershey's claims against the John Doe defendants are dismissed. Hershey never sought leave to amend his complaint to name them after learning their identities through defendants' initial disclosures, Doc. No. 41 Ex. 2, and the deadline to do so has passed. Fed. R. Civ. P. 16(b)(4).

B. <u>Marty Curtright</u>

Summary judgment is granted on Hershey's claims against Curtright because Curtright is immune from suit. This is true because it was objectively reasonable for Curtright to instruct Hershey to hand out leaflets across the street. *Duhue v. City of Little Rock, Ark.*, 2017 WL 1536231, at *20 (E.D. Ark. Apr. 27, 2017) (officer entitled to qualified immunity when arresting protestors blocking access to an office building); *see also Habiger v. City of Fargo*, 905 F.Supp. 709, 718–19 (D.N.D. Jan. 23, 1995) (officer entitled to qualified immunity when removing demonstrator because it was reasonable to believe the demonstrator interfered with abortion clinic access).

Government officials are immune from suit unless they violate clearly established rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Immunity attaches even when a government official makes a mistake of law or fact. *Id*. Summary judgment is proper, based on qualified immunity, if a defendant, as a matter of law, could have reasonably believed that his actions were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Reasonableness is judged from the perspective of a reasonable officer on the scene, rather than one with 20/20 hindsight. *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000).

C. <u>First Amendment</u>

Summary judgment is granted on Hershey's First Amendment claim against the board because the property surrounding the arena and the sidewalk on the south side of Broadway are nonpublic forums during arena events.

The First Amendment prohibits state actors from "abridging the freedom of speech," and the board is a state actor for First Amendment purposes. U.S. Const. amends. I, XIV; *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 729 (8th Cir. 2017). Leafleting is protected speech, but the Constitution does not require the government to indiscriminately grant access to "every type of [g]overnment property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Ball*, 870 F.3d at 729 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985)). "The government retains much broader discretion to restrict activities in a nonpublic forum," than it does in a "traditional" or "designated" public forum. *Id*.

Several factors support defendants' position that, during events, the area surrounding the arena is a nonpublic forum, and the Broadway sidewalk adjacent to the arena is a limited public forum. *Id.* at 730–31; *Powell v. Noble*, 798 F.3d 690, 699 (8th Cir. 2015). These factors include: the physical appearance of the property at issue; the traditional use of the property; the government's purpose and policy; and the reasonableness of the policy. *Ball*, 870 F.3d at 730–31.

*1. Area Surrounding the Verizon Arena*

The property surrounding the arena, which extends to the bordering sidewalks, is a nonpublic forum. *Ball*, 870 F.3d at 736. First, several features of the property's physical appearance distinguish it from the public sidewalks near it. Photographs of the property show brightly colored metal posts, informational signs, handicapped ramps, curved walkways

and driveways, and planters. Mot. Summ. J. Ex. 5, Doc. No. 40. These features, when taken together, "serve to set the [area] apart from its surroundings," suggesting that it does not function as a traditional public forum. *Ball*, 870 F.3d at 733.

Second, the property surrounding the arena provides outside groups the means to access the events held there. Resp. Board F. ¶¶ 3–6. The property "functions as a venue for commercial use by Arena Tenants, as a means to facilitate safe and orderly access to the Arena for its patrons." *Ball*, 870 F.3d at 734. Hershey argues that portions of the arena property are open to the public for pedestrian traffic, indicating that it is a traditional forum and entitling speakers to greater expressive protections. Resp. Mot. Summ. J. at 13, Doc. No. 52. The fact that non-attendees could conceivably pass through the property surrounding the arena, however, "does not transform the [property] into a public forum." *Ball*, 870 F.3d at 733 (citing *Bowman v. White*, 444 F.3d 967, 978 (8th Cir. 2006)).

Third, the board's written policy prohibits leafleting by non-attendees on arena property. Mot. Summ. J. Ex. 6 at 8, Doc. No. 40. This policy is "viewpoint neutral on its face" and applies regardless of message content. *Ball*, 870 F.3d at 736. The policy allows for outside groups to leaflet during their events, if negotiated as part of their rental agreements. Resp. Board F. ¶ 20. Hershey argues that the policy is not viewpoint neutral because his coworker has seen other people distributing leaflets unrelated to vegetarianism in the past without issue. *Id.* ¶ 19. Hershey also points out that officer King testified to seeing anti-abortion protestors leafleting on Washington Avenue near the arena in the past.

Resp. NLRPD F. Ex. 2 at 42–46.  Hershey does not argue that officers allowed them to impede the flow of event attendees.  *See* Resp. Mot. Summ. J. at 13, Doc. No. 52.

Fourth, the board's leafleting policy is reasonable because it is designed to "prevent interference with Arena Tenants' contractual uses of the [Verizon] Arena and to facilitate safe and efficient access to the Arena for patrons."  *Ball*, 870 F.3d at 737; Mot. Summ. J. at 4, Doc. No. 41.  Hershey argues that the leafleting policy is not reasonable because (1) leafleting is less intrusive than other forms of protected speech and is less likely to disrupt pedestrian traffic, and (2) if the mission of a group renting arena space conflicted with the mission of a group who sought to leaflet, the board would be unlikely to permit the leafleting.  *Id.* at 14–15.

Hershey does not dispute that thousands of people attend Winter Jam or that Flippin was informed of attendees' complaints about his leafleting.  Resp. NLRPD F. ¶¶ 49, 54; Resp. Board. F. at ¶¶ 35, 44, 48.  Moreover, there are available areas, including the opposite side of Washington Avenue, where Hershey could reach his intended audience before they reach the arena's crowded access points.  *See Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011) (reasonableness of restriction depends on availability of alternative channels); Resp. NLRPD F. Ex. 2 at 42–46.  Restricting leafleting during events is a reasonable way to allow large crowds to safely access the arena.

*2. Broadway Sidewalk During Arena Events*

The Broadway sidewalk adjacent to the arena, where Hershey sought to leaflet, is a limited public forum during arena events.

Public sidewalks are generally, "without more," considered traditional public forums. *Bowman*, 444 F.3d 967 at 975. Here, however, the physical appearance of the south Broadway sidewalk, its traditional use, and the government's purpose with regard to it support that it is a limited public forum during arena events. *Ball*, 870 F.3d at 730–31.

During crowded events, the "congestion, signage, [and] police presence" on the sidewalks adjacent to the arena "clearly set these areas apart from regular public sidewalks." *Id.* In *Powell*, the Eighth Circuit held that the plaintiff was not entitled to use his T-shirt, handheld sign, and one-on-one conversations to promote his religious views on the crowded sidewalks outside of the Iowa State Fair. Here, similarly, police presence, heavy pedestrian traffic, and brightly-colored posts indicated that the Broadway sidewalk was not functioning as an "open, unrestricted thoroughfar[e] for general public passage." *Id.*

In a limited public forum, speech restrictions must be reasonable and viewpoint neutral. *Powell,* 798 F.3d 690 at 700. The board's leafleting policy, Mot. Summ. J., Ex. 6 at 8, applies uniformly to non-attendees, regardless of message. *Powell,* 798 F.3d 690 at 700 (citing *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 (2010)). The policy is reasonable, as it serves to facilitate safe access to the arena during events, which necessarily includes the sidewalks adjacent to the

arena. *Id.* at 697 ("paid admission area cannot serve its purpose without mechanisms to provide [arena] access points").

D. Section 1983

Summary judgment is granted on Hershey's section 1983 claim against the board because his First Amendment rights were not violated. *See Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (no municipal liability without underlying injury).

IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment [Doc. No. 40] of defendants Curtright and the board is granted.

Hershey's motion for leave to file a supplemental affidavit [Doc. No. 64] is denied. The joint motion for summary judgment [Doc. No. 43] of defendants Davis, Flippin, and Lyon is denied as moot. Hershey's claims against the Doe defendants are dismissed, and this case is dismissed.

IT IS SO ORDERED this 14th day of August, 2020.

*/s/ Brian S. Miller*
UNITED STATES DISTRICT JUDGE